| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **Caption in Compliance with D.N.J. LBR 9004-2(c)**<br>*/s/ Hisham I. Masri*<br>HISHAM I. MASRI, ESQ. (HM-4159)<br>MASRI & ASSOCIATES, LLC<br>1455 Main Avenue, Suite 2<br>Clifton, NJ 07011<br>(973) 553-0004<br>Attorneys for Plaintiff | Chapter:        7<br><br>Case No. 11-23864 DHS<br><br>Judge: Hon. Donald H. Steckroth<br><br>Adv. Proc. No.: 12-01173 |
| In Re:<br><br>WILLIAM N. DESTEFANO,<br>                                    Debtor. | **BRIEF IN SUPPORT OF<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT** |
| LAUREN DESTEFANO,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM N. DESTEFANO,<br><br>Defendant. | |

## INTRODUCTION

Plaintiff, Lauren DeStefano, a creditor and former spouse of the debtor, William N. DeStefano, moves for summary judgment on Plaintiff's complaint to declare Plaintiff's claims nondischargeable pursuant to 11 U.S.C. § 523 (a) (5) and/or § 523 (a)(15). Defendant owes Plaintiff $182,983.77, plus interest, pursuant to an agreement that concerned the parties' marriage and the dissolution thereof. Such agreement was held to be valid and enforceable for such purpose by the Family Division of the Superior Court of New Jersey in connection with the parties' divorce. In addition, Plaintiff has incurred $72,733.21 in attorney's fees in defending and enforcing the Agreement in divorce court and additional attorneys' fees, in the approximate amount of $11,278.28, in enforcing the Agreement once again in this Court (pursuant to an Order of the Superior Court of New Jersey, entered on February 10, 2012, plaintiff was awarded counsel fees in connection with the parties divorce. However, according to that Court, so as not to violate the automatic stay, the actual amount of fees will not be entered until a determination regarding the dischargeability of such an award is made by this Court – **See Exhibit G –
February 10, 2012 Order**). The Defendant was also ordered to directly reimburse the plaintiff $2,500.00 during the course of the parties' divorce proceeding. In sum, defendant is indebted to his former spouse in the amount of $269,495.26. Such is due to plaintiff and is nondischargeable as a domestic support obligation owed to a former spouse, incurred by the debtor in the course of a divorce. In fact, **but for** the parties' divorce, this debt would not be due to Plaintiff.

## UNDISPUTED FACTS

| UNDISPUTED FACT | EVIDENCE |
|---|---|
| 1.  Plaintiff is the former spouse of the Defendant/Debtor, William N. DeStefano. | Defendant's Answers to Plaintiff's Request for Admissions at ¶ 1 – Exhibit B<br><br>Defendant's Answers to Plaintiff's Request |

| | |
|---|---|
| | for Admissions at ¶ 2 – Exhibit B<br><br>October 5, 2010 Final Judgment of Divorce – Exhibit C |
| 2.  Plaintiff and Defendant (hereinafter the "parties") entered into a prenuptial agreement on June 4, 2002. | Prenuptial Agreement – Exhibit A<br><br>Defendant's Answers to Plaintiff's Request for Admissions at ¶ 4 – Exhibit B |
| 3.  The parties were married on June 6, 2002. | Defendant's Answers to Plaintiff's Request for Admissions at ¶ 1 – Exhibit B |
| 4.  The parties were divorced on October 5, 2010 by way of Dual Final Judgment of Divorce entered by the Superior Court of New Jersey. | Defendant's Answers to Plaintiff's Request for Admissions at ¶ 2 – Exhibit B<br><br>October 5, 2010 Final Judgment of Divorce – Exhibit C |
| 5.  At the time of the parties' divorce, there existed an agreement that controlled the dissolution of the marriage, alimony, maintenance and support payments. | Prenuptial Agreement – Exhibit A<br><br>Defendant's Answers to Plaintiff's Request for Admissions at ¶ 4 – Exhibit B |
| 6.  Defendant challenged the validity of the parties' prenuptial agreement after the Plaintiff filed a complaint for divorce. | Defendant's Answers to Plaintiff's Request for Admissions at ¶ 5 – Exhibit B |
| 7.  Defendant's challenge of the validity of the parties' prenuptial agreement was struck down by the Superior Court of New Jersey. | Defendant's Answers to Plaintiff's Request for Admissions at ¶ 6 – Exhibit B<br><br>July 27, 2010 Order – Exhibit D |
| 8.  Defendant's application to set aside the parties' prenuptial agreement was denied. | Defendant's Answers to Plaintiff's Request for Admissions at ¶ 6 – Exhibit B<br><br>July 27, 2010 Order – Exhibit D |
| 9.  The prenuptial agreement calls for "property settlement payments" to the Plaintiff upon termination of the marriage as follows: $12,000 within 30 days after the termination of the marriage and $1,000 per month for a period equal to the number of months that the marriage lasted beginning on June 6, 2002. | Prenuptial Agreement at ¶ 6.C. – Exhibit A<br><br>Defendant's Answers to Plaintiff's Request for Admissions at ¶ 7 – Exhibit B |
| 10. The parties were married for eighty-eight months. | Prenuptial Agreement – Exhibit A<br><br>October 5, 2010 Final Judgment of Divorce – Exhibit C |
| 11.  The prenuptial agreement calls for the | Prenuptial Agreement at ¶ 6.D. – Exhibit A |

| | |
|---|---|
| Defendant to pay Plaintiff $27,500, plus interest at the rate of prime plus two percent, calculated as of June 6, 2002 as follows:  50% within 180 days after the termination of the marriage; the balance within one year after the termination of the marriage. | |
| 12. The parties' prenuptial agreement entitles a party to the agreement to recover legal fees and costs if the other party fails to abide by the agreement. | Prenuptial Agreement at ¶ 18 – Exhibit A<br><br>Defendant's Answers to Plaintiff's Request for Admissions at ¶ 8 – Exhibit B |
| 13. On October 5, 2010, the Defendant was ordered to reimburse his former spouse the amount of $1,875 in connection with household expenses paid by her during the divorce proceedings. | October 5, 2010 Order – Exhibit E<br><br>Defendant's Answers to Plaintiff's Request for Admissions at ¶ 9 – Exhibit B |
| 14. On December 17, 2010, the Defendant was ordered to pay his former spouse $625.00 in connection with counsel fees incurred during the divorce proceedings. | December 17, 2010 Order – Exhibit F<br><br>Defendant's Answers to Plaintiff's Request for Admissions at ¶ 10 – Exhibit B |
| 15. All Orders filed in connection with the parties' divorce survive the Final Judgment of Divorce and remain in full force and effect. | February 10, 2012 Order – Exhibit G |

## LEGAL ARGUMENT

**POINT I.   PURSUANT TO 11 U.S.C. §523(a)(5), THE PAYMENTS OUTLINED IN THE AGREEMENT ARE NONDISCHARGEABLE DOMESTIC SUPPORT OBLIGATIONS.**

Section 523(a) provides an exception from the discharge for any debt for a "domestic support obligation." That phrase is defined, in pertinent part, as a debt that is "(A) owed to or recoverable by (i) … former spouse … of the debtor… (B) in the nature of alimony, maintenance, or support…of such spouse….without regard to whether such debt is expressly so designated; (C) established ..before, on, or after the date of the order for relief in a case under this title, by reasons of applicable provisions of (i) a separation agreement, divorce decree, or property settlement agreement [or] (ii) an order of a court of record…" 11 U.S.C. §101 (14A).

Whether something is in the nature of support is a question of federal bankruptcy law. In Re Langman, 465 B.R. 395, 404 (Bankr. D.N.J. 2012). The elements that must be met in order for an obligation to qualify as a domestic support obligation are as follows: (1) the payee of the obligation must be a person with a particular relationship to the debtor; (2) the nature of the obligation must be support; (3) the source of the obligation must be an agreement, court order, or other determination; and (4) the assignment status of the obligation must be consistent with 11 U.S.C. §523 (a)(5)(D). Id. at 404 (citing to In re Anthony, 453 B.R. 782, 786 (Bankr. D.N.J. 2011)).

To determine whether an obligation is in the nature of alimony, maintenance or support, the court must look to the intent of the parties at the time of the agreement. Id. (quoting Gianakas v. Gianakas (In Re Gianakas), 917 F. 2d. 759, 762-3 (3d Cir. 1990)).

In the case at bar, the intent of the Parties is easily determined from the Agreement itself. The Agreement explicitly contemplates that Plaintiff would not be working once the parties were married and both parties acknowledged that Plaintiff sold her home and moved with her two minor children into Defendant's home in contemplation of marriage. See **Exhibit A** page 2 at ¶ 1. Defendant agreed to support Plaintiff during the marriage. See **Exhibit A** at page 3 at ¶ 2. Upon termination of the marriage, the Defendant agreed to make "property settlement payments" to Plaintiff. See **Exhibit A** page 6 at ¶ 6.C. The Plaintiff would not have waived her right to "alimony" but for such a covenant between the parties. It was agreed by the parties that upon termination of the marriage, the Plaintiff would not be indebted to Defendant in any way and was not obligated to pay him anything. See **Exhibit A** page 8 at ¶ 6.G.

It is of no consequence that the payments outlined in the Agreement were not actually labeled "alimony." See 11 U.S.C. §523(a)(5)(B). The intent of the Parties was that Plaintiff

would have sufficient financial support for her and her children once the marriage was

terminated. See **Exhibit A** at ¶¶ 6-6G. To achieve that end, the Parties entered into the

Agreement and specifically recognized that the Agreement was "in full and complete satisfaction

of all claims for support, maintenance and/or alimony." See **Exhibit A** at ¶ 15. Accordingly, the

monies owed to the Plaintiff by the Defendant were to be paid in lieu of support, maintenance,

and/or alimony.

In attempting to discharge such debts, the Defendant is seeking to circumvent the very

essence of §523(a)(5) and §523(a)(15). If successful, the Defendant would end up with a

windfall and the Plaintiff would have no recourse in any other court as the Agreement was

already held to be valid and enforceable in a New Jersey State court. If the Defendant were to

prevail in discharging the debt owed to his former spouse, Plaintiff would not be able to seek any

further claims to alimony, maintenance or support in a New Jersey State court as she has already

been told that the parties' Agreement is indeed valid and enforceable. If, now, the Defendant

were allowed to discharge such debts owed to Plaintiff, in essence, the Plaintiff/former spouse

would be punished for winning her battle to enforce the prenuptial agreement in State court.

By virtue of the various Court Orders, the Agreement was rendered valid and enforceable

and resolved all issues pertaining to the Parties' divorce. Since the Agreement was upheld by the

Court, Plaintiff did not make a claim for alimony, maintenance and/or support during the divorce

proceedings. Had the Agreement been rendered unenforceable, Plaintiff would have been

awarded alimony, support and maintenance, legal fees, etc. given the disparity in the salary

earnings of the parties. If this Court were to render the support obligations outlined in the

Agreement dischargeable simply because they were not awarded in the traditional divorce

proceeding setting, it would be tantamount to circumvention of the bankruptcy code provisions

since the divorce court would have otherwise ordered Defendant to pay alimony, support,

maintenance, etc. had the Agreement not existed or been rendered unenforceable.

In the case *sub judice*, the elements of § 523(a)(5) are clearly satisfied as (1) the payee is

the former spouse of the Defendant-Debtor; (2) the nature of the obligation is truly support (as

opposed to mere division of property)[1]; (3) the source of the obligation is the Agreement as

reinforced by Court Orders issued during a divorce and (4) there is no assignment of the

obligation to any third party.  As such, the Payments outlined in the Agreement are

nondischargeable support obligations.


**POINT II.    ASSUMING *ARGUENDO*, THE PAYMENTS OUTLINED IN THE
AGREEMENT ARE NOT SUPPORT OBLIGATIONS, THE PAYMENTS
AND ALL OTHER OBLIGATIONS IN THE AGREEMENT ARE
NONDISCHARGEABLE BY VIRTUE OF 11 U.S.C. 523(A)(15)**

Section 523(a)(15) applies to non-support obligations arising out of a divorce and excepts

from discharge any debt to a former spouse not of the kind described in §523(a)(5) that is

incurred by the debtor in the course of a divorce or in connection with a separation agreement,

divorce decree or other order of a court.  The provision encompasses a broad range of

matrimonial debts including those arising out of property settlement agreements and/or equitable

distribution.  Id. at 405.

Courts in this jurisdiction have interpreted the changes brought about by the enactment of

the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and its

effect on Section 523(a)(15).  First, BAPCPA eliminated two balancing tests that were used as

defenses by debtors to nondischargeability for non-support obligations.   Those tests were based

---

[1] Typical to alimony and maintenance payments, upon termination of the marriage, the
Agreement calls for the Defendant to pay Plaintiff a lump sum payment plus payments over a
period of time.

on whether the debtor could actually pay the debt and whether the benefits of discharging the

debt would outweigh the consequences to the former spouse or child. Id. The elimination of

these defenses was intended to reflect Congress's strong policy in favor of protecting ex-spouses

and children. Id.

"As a practical consequence, it is now no longer necessary for bankruptcy courts to

determine the exact extent to which a state court matrimonial judgment constitutes a 'domestic

support obligation' if the plaintiff can demonstrate that the judgment would be nondischargeable

in any event under section 523(a)(15)." Id.  This is so even if the debtor does not have an ability

to pay the debt or the benefits of discharging the debt outweigh the consequences of

nondischarge.  Id. (citing Tarone v. Tarone, (In re Tarone), 434 B.R. 41, 49 (Bankr. E.D.N.Y.

2010)) It also includes awards of attorneys fees incurred by non-debtor spouse, irrespective of

whether or not they are considered support obligations.  Id. (citing Monastra v. Monastra (In re

Monastra), 2010 WL 3937354 (Bankr. E.D. Pa. 2010)).

> In individual Chapter 7 and 11 cases, the distinction between a domestic support
> obligation and other types of obligations arising out of a marital relationship is of
> no practical consequence in determining the dischargeability of the debt... The
> enactment of subsection 523(a)(15), and the increase in the scope of the discharge
> exception effected by the 2005 amendments expresses Congress's recognition that
> the economic protection of dependent spouses and children under state law is no
> longer accomplished solely through the traditional mechanism of support and
> alimony payments...Property settlement arrangements are often 'important
> components of the protection afforded individuals who, during the marriage,
> depended on the debtor for their economic wellbeing.'

In re Langman, supra, 465 B.R. at 406 (quoting In re Golio, 393 B.R. at 61).

In light of the foregoing, even assuming arguendo the Payments are not "support

obligations," the Payments, along with other enumerated obligations outlined in the Agreement

are nondischaregable.  The obligations including, but not limited to, the "property settlement

payments" as described in paragraph 6.C. and Plaintiff's counsel fees, all arose from an

agreement in connection with a divorce. <u>See</u> **Exhibit A** at ¶ 6.C and ¶18. That agreement was

ordered to be held valid and enforceable in connection with a divorce. It is undisputed that the

debts at issue now were incurred by the debtor in the course of a divorce action and are owed to

his former spouse. <u>See</u> **Exhibit B.**

Furthermore, it is of no moment that Defendant now claims he cannot afford this debt

because as the above-cited case law indicates a debtor's ability to pay is no longer a defense to a

523(a)(15) claim. Likewise, there is no weighing of the benefits versus the detriments of the

discharge. The fact of the matter is, Plaintiff sold her home and brought her two minor children

to live with her former husband. She and her children depended on him for everyday living

needs. It was specifically contemplated that Plaintiff would not have to work and that she would

be supported by her husband in the event the marriage failed.

Defendant has relentlessly attempted to circumvent his obligations in the divorce court

and now in bankruptcy court to the detriment of Plaintiff who has had to expend lots of time,

energy and money to defend against his actions. This scenario is precisely the scenario

envisioned by Congress when it determined the needs of dependent spouses are to be

safeguarded against the abuse of ex-spouses who use bankruptcy to escape their spousal support

obligations. Since the debts arising out of the obligations set forth in the Agreement, as

reaffirmed by the Divorce Court, meet the elements of section 523(a)(15), they are

nondischargeable and summary judgment must be granted.

**POINT III.   THE CASE IS RIPE FOR SUMMARY JUDGMENT AS THERE ARE NO GENUINE ISSUES OF MATERIAL FACT**

Summary judgment is appropriate where "the pleadings, the discovery, and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has indicated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). "In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir.1993).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir.2001) (citing Celotex Corp., 477 U.S. at 323) In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." Id. at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party establishes the absence of a genuine issue of material fact however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine issue of material fact

for trial. Fed.R.Civ.P. 56(e) (providing that in response to a summary judgment motion the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial"). See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir.1972). If the non-moving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-movant will prevail only if the evidence produced is of "sufficient quantum and quality" to allow a rational and fair-minded fact finder to return a verdict in his favor, bearing in mind the applicable standard of proof that would apply at trial on the merits.

Here, there are no genuine issues of material facts. The evidence speaks for itself. The parties entered into an Agreement outlining the Defendant's obligations to Plaintiff upon termination of their marriage. The parties' subsequently divorced and the marriage was terminated. Defendant challenged the validity of the Agreement and lost (on more than one occasion). The divorce was granted and the Court determined the Agreement is the document that would govern the parties' obligations to each other as former spouses. Pursuant to §523(a)(5) and §523(a)(15), the obligations are nondischargeable.

Defendant, again, now attempts to escape his responsibility by seeking a discharge of the debts owed to his former spouse. Judicial resources should no longer be wasted entertaining Defendant's futile arguments. As such, Summary Judgment should be granted.

## CONCLUSION

In light of the foregoing, Plaintiff respectfully request that the Court grant Plaintiff's

Motion for Summary Judgment.


Respectfully submitted,

MASRI & ASSOCIATES, LLC
Attorneys for Plaintiff


By: _____

Hisham I. Masri, Esq.