<u>**NOT FOR PUBLICATION**</u>



**FILED**
JAMES J. WALDRON, CLERK

**JAN. 23, 2013**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In Re:** | Case No.: 11-23864 (DHS) |
| **WILLIAM N. DESTEFANO,** | Judge: Donald H. Steckroth, U.S.B.J. |
| Debtor. | |
| **LAUREN DESTEFANO,** | Adv. Pro. No.: 12-01173 (DHS) |
| Plaintiff, | |
| v. | |
| **WILLIAM N. DESTEFANO,** | |
| Defendant. | |

**<u>OPINION</u>**

**APPEARANCES:**

Masri & Associates, LLC
Hisham I. Masri, Esq.
1455 Main Avenue, Suite 2
Clifton, New Jersey 07011
*Attorneys for Plaintiff*

Salny Redbord and Rinaldi
Alexander J. Rinaldi, Esq.
9 Eyland Avenue at Route 10
Succasunna, New Jersey 07876
*Attorneys for Defendant*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is the motion of Lauren DeStefano ("Plaintiff") seeking summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Plaintiff's Motion"). The Plaintiff's Motion seeks a declaration that the debts owed to her by William N. DeStefano ("Debtor" or "Defendant"), are non-dischargeable pursuant to 11 U.S.C. § 523(a)(5) or, alternatively, 11 U.S.C. § 523(a)(15).

Specifically, the Plaintiff argues that $72,733.21 in attorney's fees incurred in defending and enforcing the Agreement in Family Court, $2,500 as ordered by the Family Court for household expenses and counsel fees, $11,278.28 in additional attorney's fees for litigating the dischargeability of the debt owed to his former spouse in this Court, and $182,983.77, plus interest, pursuant to a prenuptial agreement ("Agreement") are non-dischargeable as support obligations under § 523(a)(5) and, alternatively, arising out of a divorce proceeding under § 523(a)(15). The Defendant counters that the obligations owed under the Agreement were not intended to be support obligations and thus, § 523(a)(5) does not bar discharge. Additionally, the Defendant argues that the claimed amounts are disputed, thus giving rise to a genuine issue of material fact rendering summary judgment inappropriate. Lastly, the Defendant argues that the obligations due under the Agreement do not arise from a divorce proceeding or separation agreement and, therefore, are not barred from discharge under § 523(a)(15).

Federal Rule of Civil Procedure 56 is made applicable to this proceeding pursuant to Federal Rule of Bankruptcy 7056. The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended September 18, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL BACKGROUND

On June 4, 2002, the Plaintiff and Defendant entered into the Agreement. (Def.'s Br. In Resp. to Pl.'s Mot. For Summ. J. ("Def.'s Br."), ¶ 3; Cert. of William DeStefano ("Def.'s Cert."),¶ 1) The parties were married two days later on June 6, 2002. (Def.'s Br., ¶ 3) With respect to the obligations owed under the Agreement, the relevant portions of the Agreement provide as follows:

> 6.   Upon termination of Marriage. Upon the Termination of Marriage, Mr. DeStefano will provide to Mrs. Fowler the following:[1]
>
> . . .
>
> 6.C.   Property Settlement Payments to Mrs. Fowler. Upon termination of their relationship Mr. DeStefano has agreed to pay the following property settlement amounts to Mrs. Fowler as set

---
[1] The Plaintiff was known as "Mrs. Fowler" prior to her marriage to the Defendant.

3

> forth below. Mr. DeStefano is aware that these payments are not alimony and will not be tax deductible.
>
> 6.C.1. Mr. DeStefano will pay Mrs. Fowler $12,000 within 30 days after termination of their relationship and $1,000 per month for a period equal to the number of months that the relationship lasted beginning on June 6, 2002.
>
> 6.D. Money Owed by Mr. DeStefano to Mrs. Fowler. Mrs. Fowler loaned to Mr. DeStefano money in June of 2000 and as of June 6, 2002, the balance owed Mrs. Fowler is $27,000 plus accrued interest at the rate of prime plus two percent. This loan is payable on demand. Upon Termination of Marriage, Mr. DeStefano will repay Mrs. Fowler the entire remaining balance with interest at prime plus two percent as follows.
>
> 6.D.1. 50% within 180 days after Termination of Marriage.
>
> 6.D.2. The balance of the loan within one year after Termination of Marriage.

(Def.'s Cert., ¶ 6) As to the nature of those obligations, the Agreement provides the following:

> 7. Independent Legal Counsel. Mrs. Fowler . . . has been fully advised and understands that by signing this Agreement, she is giving up rights in the other Spouse's property and income that might otherwise be available under law . . . . These rights include . . . the right to alimony and to equitable distribution a division of property . . . . Each of the parties hereby agrees to accept the terms of this Agreement in place of, and instead of those rights that would be available through operation of the law in the absence of this Agreement.
>
> . . .
>
> 15. Mutual Waivers. Except as otherwise provided herein, each party waives all past, present, or future alimony from one another. The parties hereto further acknowledge and agree that the terms of this agreement and the payments as set forth herein is in full and complete satisfaction of all claims for support, maintenance and/or alimony that one may have against the other . . . . Each Party waives any right under <u>Lepis v. Lepis</u>, 83 N.J. 139 (1980) and <u>Crews v. Crews</u>, 164 N.J. 11 (2000), or any other applicable statute or case law, to argue that subsequent changes or circumstance render the termination of alimony provisions unfair or inequitable and recognizes that the waiver given herein is not modifiable . . . .

(Def.'s Cert., ¶ 1)

4

In February of 2009, the Plaintiff filed a complaint in the Superior Court of New Jersey seeking a divorce from the Defendant. (Def.'s Cert., ¶ 7) On October 5, 2010, the parties were divorced. (Def.'s Br., ¶ 1). This marked the beginning of the litigation over the validity of the Agreement and the dischargeability of the obligations thereunder in the Defendant's bankruptcy.

The Debtor challenged the validity of the Agreement in the Superior Court of New Jersey, Chancery Division, Family Part, before Judge Mary Gibbons Whipple. Both the challenge and a subsequent application to set aside the Agreement as unconscionable was denied by Judge Whipple. (Def.'s Br., Ex. C, p. 15) In denying the application, Judge Whipple did not rule on the merits of the Agreement or make a determination as to its terms or nature of the obligations, stating that,

> [a]s noted previously, Mr. DeStefano testified that he has consulted with a bankruptcy attorney and may file for bankruptcy after the entry of a judgment of divorce. Under the 11 U.S.C. § 523(a)(5), obligations to pay alimony maintenance and support are non-dischargeable. However, the prenuptial agreement in this case refers to all of the payments to the wife as equitable distribution or property settlement. The Bankruptcy Court may rely upon the wording of the underlying agreement and discharge all of Mr. DeStefano's obligations under the prenuptial agreement, or the Bankruptcy Court may take the view that the monthly obligation to pay $1000 to Mrs. DeStefano is more akin to alimony. Neither outcome is one that this court can predict with any certainty . . . . The determination of the character of the obligation is based on federal, not state law, for purposes of determining dischargeability.

(Def.'s Br., Ex. C, p. 21) A Final Judgment of Divorce was entered by Judge Whipple on October 5, 2010. (Def.'s Cert., ¶ 18) The Final Judgment of Divorce made no mention of either support or equitable distribution. It mentioned only that "pursuant to the proofs in such case made and provided, the marriage between the parties is dissolved and the parties are divorced from the bands of matrimony." (Def.'s Cert., ¶ 18) On December 17, 2010, the Family Court granted the following relief in response to the Plaintiff's Order to Show Cause:

1. Defendant is ORDERED to pay the Plaintiff the amount of $1,875.00 for reimbursement of household expenses, as ordered on October 5, 2010, within thirty (30) days of the date of this Order;
2. Defendant is ORDERED to pay counsel fees for the filing of the Order to Show Cause directly to Plaintiff's counsel in the amount of $625.00 within fifteen (15) days of the date of this Order;
3. Plaintiff's request for fees is DENIED WITHOUT PREJUDICE. Plaintiff is permitted to submit a request for fees pertaining solely to the enforcement of the prenuptial agreement or to file a motion arguing that all fees are associated with the enforcement.

5

(Def.'s Br., Ex. I, p. 32) This relief forms the basis for a portion of the Plaintiff's claims argued to be non-dischargeable.

The Debtor filed his petition for relief on May 2, 2011. The Debtor's attorney filed an amended petition on August 11, 2011, adding the Plaintiff to the list of creditors with a claim of $127,000, and an additional amended petition on December 22, 2001, amending the Plaintiff's claim to $300,000. (Def.'s Cert., ¶ 17) In each instance, the Debtor indicated on his Schedule F that the claim amount was disputed. In sum, it is alleged that the Plaintiff is owed $269,495.26; $72,733.21 in attorney's fees incurred in defending and enforcing the Agreement in Family Court, $2,500 as ordered by the Family Court for household expenses and counsel fees, $11,278.28 in additional attorney's fees in litigating the dischargeability of the debt owed to his former spouse in this Court, and $182,983.77, plus interest, pursuant to the Agreement. (Pl.'s Br., ¶¶ 14–20) The dischargeability of these debts is the subject of the present motion before the Court.

## DISCUSSION

### I.    Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id*. at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id*. Disputes over irrelevant or

unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.  Discischargeability

The amounts claimed to be owed to the Plaintiff by the Debtor can be broadly classified as obligations under the Agreement, attorney's fees in connection with litigating the validity of and enforcing that Agreement, and lastly, other amounts ordered by the Family Court. Each is discussed in turn.

### A.  Obligations Under the Agreement

A primary point of contention amounting to more than half of the Plaintiff's claim is the dischargeability of the $182,983.77, plus interest, owed by the Defendant pursuant to the parties' Agreement. The Plaintiff contends that this amount is non-dischargeable under § 523(a)(5) or, alternatively, (a)(15). Each subsection is addressed in turn.

#### i.  Dischargeability Under Section 523(a)(5)

Section 523(a) provides an exception from the discharge for any debt for a "domestic support obligation." As defined under the Code, a debt is a domestic support obligation when it is "(A) owed to or recoverable by (i) . . . former spouse . . . of the debtor . . . (B) in the nature of alimony, maintenance, or support . . . of such spouse . . . without regard to whether such debt is expressly so designated; (C) established . . . before, on, or after the date of the order for relief in a case under this title, by reasons of applicable provisions of (i) a separation agreement, divorce decree, or property settlement agreement [or] (ii) an order of a court of record . . . ." 11 U.S.C. § 101(14A).

Whether something is in the nature of support is a question of federal bankruptcy law. *In re Langman*, 465 B.R. 395, 404 (Bankr. D.N.J. 2012). The elements that must be met in order for an obligation to qualify as a domestic support obligation are as follows: (1) the payee of the obligation must be a person with a particular relationship to the debtor; (2) the nature of the obligation must be support; (3) the source of the obligation must be an agreement, court order, or other determination; and (4) the assignment status of the obligation must be consistent with 11 U.S.C. § 523 (a)(5)(D). *Id.* at 404. In addition, to determine whether an obligation is in the nature of alimony, maintenance, or support, the court must look to the intent of the parties at the

7

time of the agreement. *Id.* Lastly, and perhaps of most significance in this matter, is that the burden to show that payments were or are for the purpose of alimony, maintenance, or support is that of the creditor claiming non-dischargeability. *Grogan v. Garner*, 498 U.S. 279, 283 (1991). The creditor must prove non-dischargeability by a preponderance of the evidence. *Id.* at 287.

Here, it is clear a number of the elements are present for determing the debts owed under the Agreement are non-dischargeable pursuant to § 523(a)(5). Following *Langman*, the payee is the former spouse of the Debtor, the source of the obligation is the Agreement between the parties, and there is no assignment of the obligation to any third party. The only issue is whether the nature of the obligation constituted support based on the intent of the parties at the time of the Agreement.

The Plaintiff argues that the intent of the parties at the time of the Agreement was to provide support to her and that this intent is evidenced by the language of the Agreement. The Plaintiff contends that the Agreement explicitly contemplates that the Plaintiff would be supported during the marriage and after by agreeing to make "property settlement payments" and that the Agreement was "in full and complete satisfaction of all claims for support, maintenance, and/or alimony." Lastly, the Plaintiff highlights that it is of no consequence that the payments outlined in the Agreement were not actually labeled "alimony."

The Defendant relies on language in the Agreement that specifically sets forth that any amounts due to the Plaintiff are not to be deemed spousal support or equitable distribution and that it was never specifically contemplated by the parties that the Plaintiff would not have to work and would be supported in the event that the marriage failed. Furthermore, the Defendant notes that during the divorce proceeding, there was never any provision ordering any spousal support or equitable distribution.

The Court must conclude summary judgment is inappropriate at this time as the Plaintiff has not proven her allegations because of the dispute in material facts. As noted above, the burden rests on the Plaintiff to prove that the obligations owed under the Agreement were in the nature of alimony, maintenance, or support. Such a finding would seem logical and reasonable under the circumstances but the intent of the parties cannot be determined from the undisputed facts before the Court and remains in dispute. For this reason, summary judgment is denied insofar as the Plaintiff seeks a determination that the obligations owed under the Agreement are non-dischargeable pursuant to § 523(a)(5). Such a determination will have to await the testimony at the time of trial.

    **ii.**  **Dischargeability Under Section 523(a)(15)**

Assuming, arguendo, that the payments owed under the Agreement are not support obligations under § 523(a)(5), the Plaintiff argues, alternatively, that they are non-dischargeable under § 523(a)(15) as obligations arising during the course of a divorce proceeding. Section (a)(15) excepts from discharge a debt

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a

> court of record, or a determination made in accordance with State
> or territorial law by a governmental unit.

11 U.S.C. § 523(a)(15).

The Plaintiff relies heavily on *Delos v. Delos*, 2009 WL 4052151 (Bankr. D.R.I. Nov. 19, 2009), where the court held debts owed pursuant to a premarital agreement were non-dischargeable in bankruptcy even though the terms of the payments were not included in the divorce decree. The Debtor counters that *Delos* is inapplicable because, in contrast to *Delos*, the Family Court here never made a determination as to the nature of the payments. A subsequent opinion, *Yelverton v. Senyi De Nagy*, 2012 WL 4434087 (Bankr. D.C. Sept. 24, 2012), citing *Delos*, also addresses the dischargeability of debts arising from premarital agreements.

In *Delos*, a dispute arose as to the dischargeability of debts owed pursuant to a premarital agreement entered into fourteen years prior to the parties' separation. 2009 WL 4052151, at *1. The court noted that the family court appointed a forensic expert to examine and analyze the various financial transactions between the parties. *Id.* The family court ruled that the debtor owed over $700,000 pursuant to the premarital agreement, the debtor subsequently filed for chapter 7 relief, and the ex-spouse soon thereafter filed an adversary complaint asserting a claim of non-dischargeability under § 523(a)(15). *Id.* The debtor argued the debt owed pursuant to the premarital agreement was dischargeable because section 523(a)(15) only precludes discharge for debts "incurred by the debtor in the course of a divorce or separation, or in connection with a separation agreement, divorce decree, or other order of the court" and, further, that the judgment was based on premarital agreement, not principals of equitable distribution. *Id.* at *2. The issue was, therefore, whether a debt owed pursuant to a premarital contract was incurred in the course of, or in connection with, the parties' divorce. *Id.*

The *Delos* court noted that this was an issue of first impression in its court and the First Circuit. *Id.* Looking to other circuits, it noted a Ninth Circuit decision finding a premarital loan non-dischargeable, *In re Short*, 232 F.3d 1018, 1024 (9th Cir. 2000), as did a decision from the Bankruptcy Court in the Tenth Circuit. *In re Hall*, 285 B.R. 485, 489 (Bankr. D. Kan. 2002). The *Delos* court distinguished these cases. While the agreements leading to the debts in *Short* and *Hall* were invalid, the terms were specifically included in the divorce decrees, and, therefore, were incurred in connection with a divorce decree and thus the terms were subject to § 523(a)(15) exception to discharge. *Id.* Additionally, because the family court in the Delos' divorce ruled the premarital agreement was enforceable, the *Delos* court found that the Order establishing the debt owed was not pursuant to an equitable assignment, but rather the rights controlled by the premarital agreement and thus distinguished from *Short* and *Hall*. This Court would find both *In re Short* and *In re Hall* inapplicable for the same reasons.

In distinguishing the Ninth Circuit and Bankruptcy Court for the District of Kansas, the *Delos* court noted that

> [i]n our case, in the Final Judgment of Divorce, the [family court judge] noted that because of the valid, enforceable premarital agreement this case could not be treated as the ordinary equitable assignment case, and that the premarital agreement spells out the rights of the parties. If this had been the end of the [family court

9

>   judge's] consideration of the issue of distribution of the assets, [the
>   Debtor's] argument just might have survived the effect(s) of Section
>   523.

*Id.* at *3. The court noted, however, that the family court judge made his own detailed findings on the liabilities of the parties. *Id.* The court found relevant that the family court judge appointed a forensic expert, the parties testified in support of and opposition to those findings at trial, and made its own conclusions of fact and law to determine the respective liabilities of the parties based on the terms of the prenuptial agreement. *Id.* The *Delos* court found that "the rights and obligations of these parties were specifically addressed, litigated, and resolved in the course of a divorce or separation, or in connection with a separation agreement and that the disputed debt clearly was incurred by the debtor in the course of a divorce in connection with a divorce decree." *Id.* at *3.

Here, in contrast to the actions of the family court in *Delos*, it is clear from the Family Court's Statement of Reasons in denying the Debtor's motion to set aside the premarital agreement and related Orders that it did not make a determination as to the nature of the payments. In its Statement of Reasons, the Family Court recognizes that the payments under the Agreement are referred to as "equitable distribution" or "property settlements" and that as a result the bankruptcy court, in determining dischargeability of these debts, may rely on the wording of the agreement and rule that they are dischargeable or, alternatively, see the payments as alimony and, thus, non-dischargeable. The Family Court further stated that "Neither outcome is one that this court can predict with any certainty." Additionally, in reviewing the Dual Final Judgment of Divorce, it does not appear that the Family Court incorporated, referred to, or relied on the Agreement in its judgment. Lastly, on an unopposed motion for an order to show cause with respect to damages filed by Ms. DeStefano, the Family Court did not incorporate in any way the amounts owed by the Debtor under the premarital agreement. It ordered the payment of household expenses, counsel's fees for the filing of the Order to Show Cause, and permitted the Plaintiff to pursue fees for enforcement of the Agreement pursuant to the Agreement's terms. It is clear from the Orders and Statement of Reasons of the Family Court that it ruled only as to the validity of the agreement. The Family Court did not engage in a review or make a determination as to the nature of the payments, nor were those terms incorporated into the final judgment, decree, or orders. Thus, *Delos* is distinguishable from the case at bar and is not determinative.

A similar dispute arose in *Yelverton* between a debtor and his former spouse regarding the dischargeability of debts owed pursuant to a premarital agreement under sections 523(a)(5) and (15). 2012 WL 44340087, at *1. The relevant provisions of the premarital agreement included a $7,000 per month payment to the former spouse "during the marriage for her support and use," a $10,000 per month payment in relation to an employment contract, 950 euros related to the debtor's business renting an apartment from the ex-spouse, and $17,000 per month in alimony and support in the event of divorce." *Id.* at *2. The parties raised similar arguments to those in *Delos* and the case at bar. *Id.* at *5.

The *Yelverton* court first addressed the *Delos*, *Hall*, and *Short* cases, noting that,

>   these cases do not stand for the inverse proposition that debts
>   arising under an agreement that is not merged or incorporated are
>   not non-dischargeable under those provisions. That the agreement

10

> itself was not incorporated or merged in the divorce decree does not change the fact that some of the underlying obligations constitute domestic support obligations and obligations that were incurred by [the debtor] in the course of his divorce from his non-debtor spouse.

*Id.* at *6. The court went on to state that while the obligations arose under state law, non-dischargeability becomes a federal question. *Id.* at *7. In an extensive discussion and analysis of the obligations under section 523(a)(5), the court found that anything designated support or alimony in the premarital agreement expresses the intent that they serve as such and, alternatively, any payments included in a court decree are non-dischargeable under section 523(a)(5). In *Yelverton*, this included all of the obligations except for those related to employment payments and rent, which were found to be dischargeable. For its analysis under 523(a)(5), the court pointed to factors such as (1) language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary, (2) the relative financial conditions of the parties at the time of the divorce, (3) the respective employment histories and prospects for financial support, (4) the fact that one party or another receives the marital property, (5) the periodic nature of the payments, and (6) whether it would be difficult for the former spouse and children to subsist without the payments. *Id.* at 7.

The *Yelverton* court did not engage in an extensive discussion of whether the payments fell under 523(a)(15). It did, however, suggest in dicta that where a payment is due, regardless of whether or not the parties separate, the payment is likely dischargeable as not under the scope of section 523(a)(15) because it is not serving the role or purpose of a separation agreement. *Id.* at *9.

While both *Delos* and *Yelverton* address the issue at hand, neither squarely resolves the issue that confronts the Court. *Delos* is readily distinguishable as a result of the decisions and nature of the actions before Judge Whipple in the Family Court and *Yelverton*, while distinguishing *Delos* for the same factual differences as does this Court, does not render a decision on the issue of dischargeability of obligations due under a premarital agreement in circumstances such as those before the Court. As such, the Plaintiff has failed to provide the Court sufficient legal authority to rule as a matter of law that the obligations owed under the Agreement are nondischargeable. For these reasons, summary judgment is denied insofar as the Plaintiff seeks a determination the obligations owed under the Agreement are nondischargeable under § 523(a)(15).

### B.    Counsel Fees Incurred in Enforcing the Agreement

The legal fees incurred by the Plaintiff in litigating the validity of and enforcing the Agreement are non-dischargeable. It is well settled in this and other Courts that obligations in the nature of alimony and support may include the duty to pay attorney's fees to a former spouse in connection with a divorce proceeding and are therefore nondischargeable. *In re Dorman*, 3 C.B.C.2d 497 (Bankr. D.N.J. 1981); *Matter of Romeo*, 16 B.R. 531 (Bankr. D.N.J. 1981); *Marcus, Ollman & Kommer v. Pierce*, 198 B.R. 665, 666 (Bankr. S.D.N.Y. 1996) (citing *In re Spong*, 661 F.2d 6, 8 (2d Cir. 1981))

Here, the legal fees incurred litigating the validity of the Agreement in state court are in the nature of support and caused by the Defendant's failed attempt to set aside the Agreement.

While the Plaintiff alleges that she incurred $72,733.21 in fees, the amount is disputed by the Defendant and, furthermore, the Family Court indicated in its Order dated February 10, 2012 that it would fix an amount for fees upon this Court's determination on dischargeability so as not to violate the automatic stay on the estate.[2]  Therefore, summary judgment is granted in favor of the Plaintiff to the extent the Plaintiff seeks a determination that attorney's fees incurred in the Family Court litigating the validity of the Agreement are non-dischargeable.  The fixing of the amount shall be referred to the state court.

### C.   Other Amounts Ordered by the Family Court

The other amounts Ordered by the Family Court to be paid by the Defendant, including $1,875 in household expenses and $625 to enforce that Order, are of a nature rendering them non-dischargeable under § 523(a)(15).  Whether or not they are support, they were without a doubt incurred in the course of a divorce and part of a divorce decree or order.  Judge Whipple's Order specifically recites that these amounts be paid by the Defendant in connection with the divorce proceeding and they are, therefore, non-dischargeable.

### CONCLUSION

The Plaintiff's motion for summary judgment is granted in part and denied in part.  With respect to the obligations owed to the Plaintiff by the Debtor pursuant to the Agreement, summary judgment is denied.  The matter shall proceed to trial before this Court.  As to legal fees incurred by the Plaintiff in connection with litigating the validity of the Agreement in Family Court, summary judgment is granted in favor of the Plaintiff as to dischargeability alone, not amount.  The amount remains in dispute between the parties and is to be fixed by the Family Court.  Summary judgment is granted in favor of the Plaintiff with respect to the $2,500 as ordered by the Family Court for legal fees and household expenses.

An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

Very truly yours,

*s/ Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure

---

[2] The Plaintiff also contends that she has incurred an additional $11,278.28 in litigating the dischargeability of the obligations owed pursuant to the Agreement in this Court.  Since this Court has not yet made a determination as to the dischargeability of the obligations under the Agreement, it is premature to make a determination as to whether the Plaintiff is entitled to fees in connection with that determination.