# UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH
BANKRUPTCY JUDGE

(973) 645-4693
Fax: (973) 645-2606

**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**NOV. 6, 2013**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*
JUDICIAL ASSISTANT

November 6, 2013

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Hisham I. Masri, Esq.
Masri & Associates, LLC
1455 Main Avenue
Suite 2
Clifton, New Jersey 07011
*Counsel for Plaintiff*

William N. DeStefano
141 Westville Avenue
Caldwell, New Jersey  07006
*Pro se Debtor*

Re:     **Lauren DeStefano v. William N. DeStefano**
        **Adversary Proceeding No.: 12-01173 (DHS)**

The Court conducted a trial in which Lauren DeStefano ("Plaintiff") seeks a declaration that the debts owed to her by her former husband, William N. DeStefano ("Debtor" or "Defendant") are non-dischargeable pursuant to 11 U.S.C. § 523(a)(5) or, alternatively, 11 U.S.C. § 523(a)(15).

Specifically, Plaintiff's complaint asserts $2,500 as ordered by the Family Court for household expenses and counsel fees, $72,733.21 in attorney's fees incurred in defending and enforcing a prenuptial agreement ("Agreement") in Family Court, and $182,983.77, plus interest, pursuant to the Agreement are non-dischargeable as support obligations. The Plaintiff also contends that she has incurred an additional $13,431.00 in litigating the dischargeability of the obligations owed pursuant to the Agreement in this Court.

On January 23, 2013, this Court granted partial summary judgment in favor of the Plaintiff with respect to: (i) the $2,500 as ordered in connection with the parties' divorce action in the Superior Court of New Jersey, Chancery Division, Family Part, Docket No. FM-14-941-09 ("Family Court") for legal fees and household expenses; and (ii) the dischargeability of the legal fees incurred by the Plaintiff in connection with litigating the validity of the Agreement in Family Court. Because the amount of those legal fees remained in dispute between the parties, this Court deferred to the Family Court to fix the fee amount. With respect to the obligations owed to the Plaintiff by the Debtor pursuant to the Agreement, summary judgment was denied. Since this Court had not yet made a determination as to the dischargeability of the obligations under the Agreement, it was premature to make a determination as to whether the Plaintiff is entitled to fees in connection therewith at the time of the summary judgment ruling.

Page 3
November 6, 2013

The narrow issue left is whether the obligations under the Agreement were intended to be support obligations or were incurred in the course of a divorce. The Plaintiff argues that the intent of the parties at the time of the Agreement was to provide support to her, while the Defendant counters that the obligations owed under the Agreement were not intended to be support obligations and thus, § 523(a)(5) does not bar discharge. Additionally, the Defendant argues that the obligations due under the Agreement do not arise from a divorce proceeding or separation agreement and, therefore, are likewise not barred from discharge under § 523(a)(15).

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended September 18, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL BACKGROUND

On June 4, 2002, the Plaintiff and Defendant entered into the Agreement. (Joint Stipulation of Undisputed Facts ¶ 1) The parties were married two days later on June 6, 2002. (Joint Stipulation of Undisputed Facts ¶ 2) With respect to the obligations owed under the Agreement, the relevant portions of the Agreement provide as follows:

> 6.   Upon termination of Marriage. Upon the Termination of Marriage, Mr. DeStefano will provide to Mrs. Fowler the following:[1]
> . . .

---

[1] The Plaintiff was known as "Mrs. Fowler" prior to her marriage to the Defendant.

Page 4
November 6, 2013

> 6.C. Property Settlement Payments to Mrs. Fowler. Upon termination of their relationship Mr. DeStefano has agreed to pay the following property settlement amounts to Mrs. Fowler as set forth below. Mr. DeStefano is aware that these payments are not alimony and will not be tax deductible.
> 6.C.1. Mr. DeStefano will pay Mrs. Fowler $12,000 within 30 days after termination of their relationship and $1,000 per month for a period equal to the number of months that the relationship lasted beginning on June 6, 2002.
> 6.D. Money Owed by Mr. DeStefano to Mrs. Fowler. Mrs. Fowler loaned to Mr. DeStefano money in June of 2000 and as of June 6, 2002, the balance owed Mrs. Fowler is $27,000 plus accrued interest at the rate of prime plus two percent. This loan is payable on demand. Upon Termination of Marriage, Mr. DeStefano will repay Mrs. Fowler the entire remaining balance with interest at prime plus two percent as follows.
> 6.D.1. 50% within 180 days after Termination of Marriage.
> 6.D.2. The balance of the loan within one year after Termination of Marriage.

(Pl.'s Ex. 17 ¶ 6)  As to the nature of those obligations, the Agreement provides the following:

> 7. Independent Legal Counsel. Mrs. Fowler . . . has been fully advised and understands that by signing this Agreement, she is giving up rights in the other Spouse's property and income that might otherwise be available under law . . . . These rights include . . . the right to alimony and to equitable distribution a division of property . . . . Each of the parties hereby agrees to accept the terms of this Agreement in place of, and instead of those rights that would be available through operation of the law in the absence of this Agreement.
>  . . .
> 15. Mutual Waivers. Except as otherwise provided herein, each party waives all past, present, or future alimony from one another. The parties hereto further acknowledge and agree that the terms of this agreement and the payments as set forth herein is in full and complete satisfaction of all claims for support, maintenance and/or alimony that one may have against the other . . . . Each Party waives any right under Lepis v. Lepis, 83 N.J. 139 (1980) and Crews v. Crews, 164 N.J. 11 (2000), or any other applicable statute or case law, to argue that subsequent changes or circumstance render the termination of alimony

Page 5
November 6, 2013

> provisions unfair or inequitable and recognizes that the waiver given herein is not modifiable . . . .

(Pl.'s Ex. 17 ¶¶ 7, 15)

A prior draft of the Agreement circulated amongst the parties contained slightly different language regarding the Property Settlement Payments to Mrs. Fowler found in paragraph 6C of the Agreement. While the finalized version of the Agreement provides that the property settlement payments are "not alimony," the prior draft of the Agreement categorized those same property settlement payments as alimony. Paragraph 9 of the prior draft, entitled "Support for Mrs. Fowler," provides that "Mrs. Fowler is aware that these payments will be alimony that is taxable to her and deductible by Mr. DeStefano." (Pl.'s Ex. 39 ¶ 9)   The language referencing support and alimony was taken out by Plaintiff's counsel during negotiations of the Agreement. The original language had been drafted by Mr. DeStefano's counsel and Plaintiff's counsel removed the language with the intent being to avoid tax consequences for Ms. DeStefano. (Trial Tr. 10:51 Sept. 12, 2013)

The Plaintiff sold her home in contemplation of the marriage and loaned the Debtor $27,500 to renovate his home in anticipation of and before the parties were married. (Trial Tr. 10:46 Sept. 12, 2013. The parties agreed that the Plaintiff would not work during the marriage. (Trial Tr. 10:53 Sept. 12, 2013)

In February of 2009, the Plaintiff filed a complaint in the Superior Court of New Jersey seeking a divorce from the Defendant. (Def.'s Cert., ¶ 7)  On October 5, 2010, the parties were divorced. (Joint Stipulation of Undisputed Facts ¶ 3)   This date marks the end of the parties'

Page 6
November 6, 2013

eight year (100-month) marriage and the beginning of the litigation over the validity of the Agreement and the dischargeability of the obligations thereunder in the Defendant's bankruptcy.

The Debtor challenged the validity of the Agreement in the Superior Court of New Jersey, Chancery Division, Family Part, before the Honorable Judge Mary Gibbons Whipple. Both the challenge and a subsequent application to set aside the Agreement as unconscionable were denied by Judge Whipple. (Joint Stipulation of Undisputed Facts ¶¶ 7, 8) In denying the application, Judge Whipple neither ruled on the merits of the Agreement nor made a determination as to its terms or the nature of the obligations, stating that,

> [a]s noted previously, Mr. DeStefano testified that he has consulted with a bankruptcy attorney and may file for bankruptcy after the entry of a judgment of divorce. Under the 11 U.S.C. § 523(a)(5), obligations to pay alimony, maintenance and support are non-dischargeable. However, the prenuptial agreement in this case refers to all of the payments to the wife as equitable distribution or property settlement. The Bankruptcy Court may rely upon the wording of the underlying agreement and discharge all of Mr. DeStefano's obligations under the prenuptial agreement, or the Bankruptcy Court may take the view that the monthly obligation to pay $1000 to Mrs. DeStefano is more akin to alimony. Neither outcome is one that this court can predict with any certainty . . . . The determination of the character of the obligation is based on federal, not state law, for purposes of determining dischargeability.

(Pl.'s Ex. 29, at 7) A Final Judgment of Divorce was entered by Judge Whipple on October 5, 2010. (Pl.'s Ex. 20) The Final Judgment of Divorce made no mention of either support or equitable distribution. It mentioned only that "pursuant to the proofs in such case made and provided, the marriage between the parties is dissolved and the parties are divorced from the bonds of matrimony." (Pl.'s Ex. 20, at 1) On December 17, 2010, the Family Court granted the following relief in response to the Plaintiff's Order to Show Cause:

Page 7
November 6, 2013

1. Defendant is ORDERED to pay the Plaintiff the amount of $1,875.00 for reimbursement of household expenses, as ordered on October 5, 2010, within thirty (30) days of the date of this Order;
2. Defendant is ORDERED to pay counsel fees for the filing of the Order to Show Cause directly to Plaintiff's counsel in the amount of $625.00 within fifteen (15) days of the date of this Order;
3. Plaintiff's request for fees is DENIED WITHOUT PREJUDICE. Plaintiff is permitted to submit a request for fees pertaining solely to the enforcement of the prenuptial agreement or to file a motion arguing that all fees are associated with the enforcement.

(Pl.'s Ex. 22) This relief forms the basis for a portion of the Plaintiff's claims before this court.

The Debtor filed his Chapter 7 petition on May 2, 2011 without scheduling Plaintiff as a creditor. The Debtor thereafter filed an amended petition on August 11, 2011, adding the Plaintiff to the list of creditors with a scheduled claim of $127,000, (Pl.'s Ex. 33), and an additional amended petition on December 22, 2011, amending the Plaintiff's claim to $300,000. (Pl.'s Ex. 36) In each instance, the Debtor indicated on Schedule F that the claim amount was disputed. In sum, it was alleged in Plaintiff's motion that the Plaintiff is owed $269,495.26: $72,733.21 in attorney's fees incurred in defending and enforcing the Agreement in Family Court, $2,500 as ordered by the Family Court for household expenses and counsel fees, $11,278.28 in additional attorney's fees in litigating the dischargeability of the debt owed to his former spouse in this Court, and $182,983.77, plus interest, pursuant to the Agreement. (Pl.'s Br., ¶¶ 14-20) This Court's ruling on the Plaintiff's summary judgment motion has resolved all but the dischargeability of the $182,983.77 debt, plus interest, pursuant to the Agreement, and the attorney's fees for litigating the dischargeability of the debt in this Court. Since the filing of

Page 8
November 6, 2013

Plaintiff's motion, the legal fees and costs incurred in connection with this matter have increased to $13,431.00.

The Plaintiff did not receive any alimony or support payments, nor did she receive any property settlement or equitable distribution payments in connection with the divorce. (Joint Stipulation of Undisputed Facts ¶¶ 19-21) Moreover, the Debtor has not paid any counsel fees which have been awarded to the Plaintiff. (Joint Stipulation of Undisputed Facts ¶ 18)

## DISCUSSION

### I.   Dischargeability of the Obligations Under the Agreement

The primary point of contention is the dischargeability of the $182,983.77, plus interest, owed by the Defendant pursuant to the parties' Agreement. The Plaintiff contends that this amount is non-dischargeable under § 523(a)(5) or, alternatively, (a)(15). Each subsection is addressed in turn.

#### 1.   Dischargeability Under Section 523(a)(5)

Section 523(a) provides an exception from the discharge for any debt for a "domestic support obligation." As defined under the Code, a debt is a domestic support obligation when it is "(A) owed to or recoverable by (i) . . . former spouse . . . of the debtor . . . (B) in the nature of alimony, maintenance, or support . . . of such spouse . . . without regard to whether such debt is expressly so designated; (C) established . . . before, on, or after the date of the order for relief in a case under this title, by reasons of applicable provisions of (i) a separation agreement, divorce decree, or property settlement agreement [or] (ii) an order of a court of record . . . ." 11 U.S.C. § 101(14A).

Page 9
November 6, 2013

Whether something is in the nature of support is a question of federal bankruptcy law. *In re Langman*, 465 B.R. 395, 404 (Bankr. D.N.J. 2012). The elements that must be met in order for an obligation to qualify as a domestic support obligation are as follows: (1) the payee of the obligation must be a person with a particular relationship to the debtor; (2) the nature of the obligation must be support; (3) the source of the obligation must be an agreement, court order, or other determination; and (4) the assignment status of the obligation must be consistent with 11 U.S.C. § 523 (a)(5)(D). *Id.* at 404. In addition, to determine whether an obligation is in the nature of alimony, maintenance, or support, the court must look to the intent of the parties at the time of the agreement. *Id.* Lastly, the burden to show that payments were or are for the purpose of alimony, maintenance, or support is upon the creditor claiming non-dischargeability. *Grogan v. Garner*, 498 U.S. 279, 283 (1991). The creditor must prove non-dischargeability by a preponderance of the evidence. *Id.* at 287.

Here, it is clear a number of elements are present for determining the debts owed under the Agreement are non-dischargeable pursuant to § 523(a)(5). Following *Langman*, the payee is the former spouse of the Debtor, the source of the obligation is the Agreement between the parties, and there is no assignment of the obligation to any third party. The critical issue left for trial was whether the nature of the obligation constituted support based on the intent of the parties at the time of the Agreement.

The Plaintiff argues that the intent of the parties at the time of the Agreement was to provide support to her and that this intent is evidenced by the language of the Agreement together with drafts of the final Agreement. The Plaintiff contends that the Agreement explicitly

Page 10
November 6, 2013

contemplates that the Plaintiff would be supported during the marriage and after by agreeing to make "property settlement payments" and that the Agreement was "in full and complete satisfaction of all claims for support, maintenance, and/or alimony."

The Plaintiff highlights that it is of no consequence that the payments outlined in the Agreement were not actually labeled "alimony," arguing the payments are structured consistent with what is usually found to be in the nature of support and the intent of the parties was that Plaintiff would have sufficient financial support for herself and her children once the marriage terminated. It is undisputed the Defendant preferred that the Plaintiff not maintain work outside the home. Accordingly, the Plaintiff quit her job, sold her home, relocated her children, and became a "stay-at-home mom" at the request of and for the benefit of the Defendant and the marriage. While the language regarding property settlement payments specifies that those payments are "not alimony," the document does not address whether they are in the nature of maintenance or support. The Defendant himself stated that the payments pursuant to the Agreement were "instead of alimony." (Pl.'s Ex. 24, 15:23-25 -16:1-3) Additionally, the trial testimony illustrates that the Defendant's counsel drafted the Agreement initially categorizing the property settlement payments as alimony under a paragraph entitled "Support for Mrs. Fowler." (Pl.'s Ex. 39 ¶ 9)  This language was subsequently altered as a result of Plaintiff's counsel's attempt to avoid a tax consequence to the payments.

The Defendant relies on language in the Agreement that specifically sets forth that any amounts due to the Plaintiff are not to be deemed spousal support or equitable distribution and testified that it was never specifically contemplated by the parties that the Plaintiff would not

Page 11
November 6, 2013

have to work and would be supported in the event that the marriage failed. Furthermore, the Defendant notes that during the divorce proceeding, there was never a provision ordering any spousal support or equitable distribution. Additionally, the Defendant asserts that his intention in entering the Agreement was to protect his premarital assets. Finally, the Defendant claims the payments to the Plaintiff were meant to be a penalty to him in the event of a divorce. (Trial Tr. 12:18 Sept. 12, 2013) A similar argument was rejected by the Eastern District of New York. In *In re Golio*, 393 B.R. 56, 62 (Bankr. E.D.N.Y. 2008), the defendant sought to characterize certain amounts awarded to his ex-spouse as a penalty and not a support obligation. The Court found this argument to be "irrelevant to the Court's determination of dischargeability under 11 U.S.C. § 523," because the agreement between the parties was never appealed, and because the state court found the agreement to be valid and enforceable. *In re Golio*, 393 B.R. at 62.

While the four corners of the document state otherwise, it seems clear from the trial testimony that the payments due to Plaintiff upon termination of the marriage were intended to be and were in the nature of alimony and support payments. As such, these payments are non-dischargeable pursuant to 11 U.S.C. § 523(a)(5). In addition, the Court will undertake further analysis under 11 U.S.C. § 523(a)(15).

**2. Dischargeability Under Section 523(a)(15)**

Alternatively, the Plaintiff argues that the payments under the Agreement are non-dischargeable under § 523(a)(15) as obligations arising during the course of a divorce proceeding. Section (a)(15) excepts from discharge a debt

> not of the kind described in paragraph (5) that is incurred by the
> debtor in the course of a divorce or separation or in connection

Page 12
November 6, 2013

> with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

11 U.S.C. § 523(a)(15). The current statutory language of § 523(a)(15) is the result of amendments enacted as part of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") amendments. BAPCPA produced a noteworthy change in the law governing the nondischargeability of matrimonial debts. *In re Langman*, 465 B.R. 395, 405 (Bankr. D.N.J. 2012).

"BAPCPA eliminated two balancing tests that had formerly provided debtors with defenses to nondischargeability for non-support debts based on (1) whether the debtor would be able to pay the debt and (2) whether discharging the debt would result in a benefit to the debtor that would outweigh the detrimental consequences to the former spouse or child." *In re Langman*, 465 B.R. 395, 405 (Bankr. D.N.J. 2012) (citing *Gilman v. Golio (In re Golio)*, 393 B.R. 56, 61 (Bankr. E.D.N.Y. 2008)). If the plaintiff can demonstrate that the judgment would nevertheless be nondischargeable under § 523(a)(15), it is no longer necessary for bankruptcy courts to determine the exact extent to which a state court matrimonial judgment constitutes a "domestic support obligation" in individual chapter 7 and chapter 11 cases. *In re Langman*, 465 B.R. at 405.

The elimination of the balancing tests was intended to further Congress's intent by "protecting ex-spouses and children and to cover any matrimonial debts that should not justifiably be discharged." *In re Langman*, 465 B.R. at 405 (internal quotation omitted). The BAPCPA amendments illustrate "Congress's recognition that the economic protection of

Page 13
November 6, 2013

dependent spouses and children under state law is no longer accomplished solely through the traditional mechanism of support and alimony payments." *Id.* (citing *In re Golio*, 393 B.R. 56, 61 (Bankr. E.D.N.Y. 2008)).

In the present case, there is no doubt the debts owed to the Plaintiff were incurred by the Debtor in the course of a divorce or in connection with the divorce decree. The prenuptial agreement between the parties states: "the parties desire to fix, limit, and determine by this agreement the interest, rights and claims that will accrue to each of them in the property and estate of the other . . . in the event of a separation or divorce . . . ." (Pl.'s Ex. 17, at 2) Upon the parties' divorce, the Agreement became the controlling document for determining the rights and claims to their property. Here, the Plaintiff is owed the debt pursuant to her status as the Debtor's former spouse. The parties' Agreement has been upheld by the Superior Court of New Jersey to be a valid and enforceable agreement and controls the dissolution of the marriage. The enactment of subsection 523(a)(15) and the increase in the scope of the exception to discharge pursuant to the 2005 BAPCPA amendments clearly support the determination that the debts incurred under the Agreement were meant to fall within the broad reach of the statute. Accordingly, the debt in question is determined to be nondischargeable, pursuant to 11 U.S.C. § 523(a)(15).

## II.    Counsel Fees Incurred in Litigating Dischargeability

The Plaintiff is not entitled to legal fees incurred in litigating the dischargeability of obligations under the Agreement in this Court. The American Rule states that the prevailing

Page 14
November 6, 2013

party is not entitled to attorney's fees unless certain limited exceptions apply. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247 (1975). The purpose of the American Rule is to afford plaintiffs with liberal access to the courts, because "[c]onditioning participation on the prospect of losing and paying the entire cost of litigation chills a litigant's rights." *In re S.S.*, 271 B.R. 240, 245 (Bankr. D.N.J. 2002). The American Rule applies to bankruptcy court litigation. *Id.* at 245-46 (Bankr. D.N.J. 2002) (citing *In re Coast Trading Co., Inc.*, 744 F.2d 686, 693 (9th Cir. 1984) (While a party may be entitled to attorneys' fees in the bankruptcy proceeding in accord with the applicable state law, "there is no general right to attorney's fees for actions in bankruptcy").

The District Court of New Jersey has noted three ways to seek an award of counsel fees in a bankruptcy action: (1) an award of fees using the bankruptcy court's equitable power under 11 U.S.C. § 105(a); (2) an award of fees under Bankruptcy Rule 7054; and (3) an award of fees as a sanction under Bankruptcy Rule 9011. *In re Clemente*, 2011 WL 2039072, at *2 (D.N.J. May 23, 2011). Section 105(a) gives bankruptcy judges the equitable power to enforce its orders and prevent an abuse of process. An award of attorney's fees in this case would not accomplish the enforcement of an order or the prevention of abuse. Rule 7054 provides that the court may award costs to the prevailing party except when a bankruptcy rule or United States statute provides otherwise. Because Rule 7054 pertains to costs rather than attorney's fees, it is inapplicable to the issue of Plaintiff's attorney's fees here. Finally, because there has been no finding of bad faith, section 9011 does not apply.

Page 15
November 6, 2013

An action to declare debt nondischargeable is a pure bankruptcy proceeding controlled by federal law. *See* 28 U.S.C. § 157(b)(2)(I); *see also In re S.S.*, 271 B.R. 240, 245. There is no legal basis for awarding counsel fees to a plaintiff for prosecuting a nondischargeability action. *Id.* at 248; *In re Clemente*, 2011 WL 2039072, at *2 ("[I]n the absence of an agreement between the parties or a statutory provision that would entitle Plaintiff to an award of counsel fees," the Bankruptcy Court has no authority to award legal fees to the prevailing plaintiff in a nondischargeability proceeding.). In the present case, Plaintiff seeks recovery of legal fees incurred in litigating the dischargeability of the Defendant's debts in Bankruptcy Court, and thus, Plaintiff's request for attorney's fees must be denied.

## CONCLUSION

The debts owed to the Plaintiff are in the nature of alimony, maintenance or support and were incurred by the Debtor in the course of a divorce. They are therefore nondischargeable under 11 U.S.C. § 523(a)(5) and 11 U.S.C. § 523(a)(15). The Plaintiff is not entitled to attorney's fees for prosecuting this nondischargeability action.

An Order in conformance with this Opinion has been entered by the Court and a copy attached hereto.

Very truly yours,

*s/* *Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure